BEECHER, Ex'x, etc., *v.* CHICAGO & N. W. R. Co.

*(Circuit Court, N. D. Illinois.* November 20, 1882.)

1. LAND GRANT IN AID OF RAILROADS.

Certain lands were granted by congress to a state to aid in the construction of railroads, and by the state were granted to a certain railroad company, which mortgaged the same, and defendant became the purchaser at the foreclosure sale. *Held,* that the conditions upon which the land had been granted by congress not having been complied with, the title still remained in the United States.

2. SAME—LANDS HELD IN TRUST—LIABILITY FOR WASTE.

Where defendant agreed that the lands should be devoted to the payment of certain indebtedness of the railroad company to which the land had been granted by the state, and executed and delivered to the bondholders representing such indebtedness "convertible land certificates," which were made assignable, it held the equitable title as trustee, and was not liable for waste in the removal of valuable timber therefrom, unless actually received and used by it. The beneficiaries under the trust had the power to protect their own interests.

*John M. Jewett,* for complainant.

*B. C. Cook,* for defendant.

DRUMMOND, C. J. The bill in this case is founded on the theory that the defendant was the trustee for a series of years of certain timber lands in Wisconsin, the chief value of which at the time consisted

in the timber growing upon them, and that it was the duty of the defendant, as such trustee, to exercise reasonable diligence in preserving the timber and preventing waste, and that was not done.

It was also founded on the allegation that the defendant directly permitted timber to be cut. The lands were granted in 1856 by congress to the state of Wisconsin for the purpose of aiding in the construction of railroads in that state. The state granted some of them to a railroad company, which had mortgaged them to secure a certain indebtedness, and upon foreclosure proceedings under the mortgage the lands were transferred to the defendant, a corporation created by the laws of Wisconsin and Illinois. The defendant agreed that the land should be devoted to the payment of certain indebtedness of the railroad company, to which the land had been granted by the state. This arrangement was completed in 1859. At that time the conditions upon which the land had been granted by congress not having been complied with, the title still remained in the United States, and therefore a good title could not be made to those who represented the indebtedness of the railroad company already mentioned. In consequence of this, the defendant executed and delivered to the bondholders representing that indebtedness what were denominated "convertible land-grant certificates," which set forth that the defendant held the lands by virtue of the laws of Wisconsin, and "certified" that after the first day of July, 1860, the holders of these bonds were entitled, on presentation of the certificates, to a deed for a proportionate share of the land, in accordance with the legal subdivisions which the defendant might receive on the completion of that portion of the railroad referred to in the acts and grants, in the proportions named in the certificates. These certificates were delivered to the bondholders upon the surrender of the bonds held by them. They were assignable, and the plaintiff's testator acquired a large amount of them. While the lands were thus held by the defendant, the most valuable part of the pine timber standing upon them, at the date of the certificates and at the time the title was acquired by the railroad company, (1861,) was cut off and removed. In 1868 the legislature of Wisconsin authorized the defendant to take proceedings in any circuit court of the state for a partition of the lands among the holders of the certificates, and under the authority of this statute proceedings were instituted in the circuit court of Milwaukee county. The certificate-holders did not appear. Publication was made, defaults entered, reference was made, and the referee reported that it was impracticable to partition the land among the various certificate-hold-

ers, and a sale wasorder ed. In the decree of sale provision was made that the certificates might be used in the purchase of land, upon certain terms. At these sales, made under the order of the court, the lands were all sold. The plaintiff's testator was a purchaser of lands at the sale.

The main question in the case is whether the defendant is liable for the timber cut down and removed from the lands; and if so, what is the nature and extent of its liability. There seems to be no question made by the defendant growing out of the consolidated character of the corporation under the laws of Wisconsin and Illinois, or that the subject-matter of this controversy relates to lands held in trust in the former state. I do not think that the general theory upon which the bill is framed can be maintained, that is, because the lands were held by the defendant under the circumstances named, for a particular purpose, the defendant was obliged to protect them from trespasses and waste. The plaintiff was one of the beneficiaries under the trust, and under the laws of Wisconsin he undoubtedly had a right to take the proceedings necessary to protect the land in which he had an interest from the depredations of trespassers. But the defendant was a mere naked trustee for the purposes named, even if the title was acquired from the United States and vested in the company in 1861. Before the proceedings in partition took place under the special act of the legislature which has been referred to, it was competent for the plaintiff's testator to take all proper measures under the laws of Wisconsin for the protection of his interest, and I apprehend it was not material whether the other beneficiaries did or did not join in such action. It may be very questionable, I think, whether the demand which it is claimed was made on Mr. Ogden in New York, was of such a character as to require the performance of any affirmative action on the part of the defendant. The convertible land-grant certificates which were issued, declared that the holders of the bonds were entitled on presentation of the certificates to a deed for a proportionate share of land in accordance with certain principles therein stated. It would seem that a more formal demand than that referred to in the testimony of Mr. Beecher was necessary in order to put the defendant in default on non-compliance with such demand. It certainly was more obligatory on the plaintiff's testator and the beneficiaries under the trust to look after their interests in these lands, and to guard against waste and trespasses, than on the defendant. Besides, the beneficiaries provided no fund out of which the defendant should be paid for any expenditures that might be incurred.

But, although this may be so, still I think there are certain facts which, it is claimed by the plaintiff, are established by the evidence, which, if true, may entitle her to relief, independent of the view already stated by the court. It is said, and there is proof tending to show that the defendant received a part of the proceeds of the sales of timber, and that some of the timber which was taken from the land thus held in trust was used by the defendant. Wherever the proceeds of the timber taken from the land can be traced into the hands of the defendant, or wherever timber cut from the land has been used by the defendant, it ought to account to the equitable owners of the land; and so the plaintiff may be entitled to her share to that extent and no further.